```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
ALEXY ROSARIO,                    :
                                  :
                  Petitioner,     :      07 Civ. 5907 (VM)
                                  :
        -against-                 :      DECISION AND ORDER
                                  :
JOHN BURGE, Superintendent,       :
Elmira Correctional Facility,     :
                                  :
                  Respondent.     :
---------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

## I. INTRODUCTION

Pro se petitioner Alexy Rosario ("Rosario") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006). Rosario was convicted in New York State Supreme Court, New York County (the "Trial Court"), of burglary in the second degree in violation of New York Penal Law § 140.25(2), grand larceny in the third degree in violation of New York Penal Law § 155.35, criminal possession of stolen property in the third degree in violation of New York Penal Law § 165.50, and possession of burglar's tools in violation of New York Penal Law § 140.35 (collectively, the "Offenses"). Rosario was sentenced to imprisonment for a determinate term of twelve years. In his petition, Rosario asserts the following grounds as bases for habeas relief: (1) his statements to the police were the result of an unlawful arrest and therefore improperly admitted at trial; (2) he was deprived of due process because of the Trial Court's failure to grant a continuance in order to allow Rosario to produce a witness at trial; (3) the Trial Court erred in failing to properly conduct a Batson hearing upon the Rosario's objection to the prosecutor's use of peremptory strikes; and (4) the Trial Court

- 1 -

failed to properly charge the jury on the government's burden to disprove Rosario's alibi defense.  For the reasons set forth below, Rosario's petition is DENIED.

## II.  **BACKGROUND**

A.     FACTS AND PROCEDURAL HISTORY[1]

1. The Burglary

At approximately 3:00 a.m. on March 20, 2003, three plain-clothes police officers (the "Officers") were patrolling in an unmarked car near First Avenue and East 119th Street in Manhattan, New York.  The Officers initially noticed Rosario and Clarence Jones ("Jones") walking north on First Avenue because each man resembled the general description of a suspect[2] in a series of reported burglaries and robberies in the area, and at the time, Jones was carrying a large black trash bag, adding to the suspicion.

After driving past Rosario and Jones, the Officers turned on their rear flashing lights.  Upon seeing the police, Rosario and Jones abruptly turned onto East 119th Street.  The Officers backed

---

[1] The factual summary below is derived from the Suppression Hearing Transcript (Supreme Court of New York, Part 44, Oct. 24, 2003) ("Suppression Tr."), the Pre-Trial Conference Transcript (Supreme Court of New York, Part 94, Dec. 4, 2003) ("Pre-Trial Tr."), the Voir Dire Transcript (Supreme Court of New York, Part 94, Dec. 5, 2003) ("Voir Dire Tr."), and the Trial Transcript (Supreme Court of New York, Part 94, Dec. 9, 2003) ("Trial Tr.") in People v. Alexy Rosario, Indictment #1672-03 (Feb. 11, 2004); and from submissions of the parties to this Court, as well as their earlier submissions to the state courts, namely: Brief for the Defendant-Appellant, dated January 2005 ("Def. Br."); Brief for Respondent, dated January 2006 ("Resp. Br."); Rosario's Habeas Corpus Petition, dated May 29, 2007 (the "Petition"); Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated November 29, 2007 ("Resp. Dec."); and Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated November 29, 2007 ("Resp. Mem.").  Except where specifically quoted, no further reference to these documents will be made.

[2] The suspect was described as a Hispanic man about 5'3" to 5'8" tall, with short hair and a dark jacket.

up, turning onto East 119th Street to follow Rosario and Jones.
When the Officers caught up with the two men, Jones was no longer
carrying the large black bag.  The Officers tapped their siren,
causing Rosario and Jones to stop, and the Officers got out to
question them.

Rosario provided identification upon request and stated that
he and Jones were coming from the apartment of Rosario's girlfriend,
although the girlfriend's address was in the opposite direction from
which they were headed.  Jones stated that his identification was
in his car, which the two men had walked past.  The Officers noticed
that Jones was sweating and appeared nervous, prompting an Officer
to pat down Jones, which resulted in the recovery of burglar's
tools.  One of the Officers saw the black trash bag with its
contents exposed in Jones's car, with numerous phone cards, two
crowbars, and an ATM box visible.

An Officer searched for signs of a break-in on First Avenue,
discovering a bodega roughly forty feet south of the spot where the
Officers first noticed Rosario and Jones.  The store's front gate
was raised, its front door broken into, and the contents of its ATM
removed.  After discovering the bodega break-in, the Officers
arrested Rosario, peaceably, and Jones, after a brief flight.

After Rosario was placed in custody, a detective read Rosario
a printed Miranda warning and Rosario responded that he understood
his rights.  Rosario agreed to answer questions and provided a
signed statement that he had assisted Jones in burglarizing the
bodega.

By New York County Indictment Number 1672/03, filed on April

- 3 -

4, 2003, Rosario and Jones were charged with the Offenses.

### 2. The Suppression Hearing

Rosario moved to suppress the physical evidence collected after his arrest, as well as his statement to police, on the grounds that the police lacked probable cause to arrest him. After a hearing on the matter, the Trial Court denied Rosario's request, finding sufficient probable cause to justify Rosario's arrest.

### 3. The Pre-Trial Conference

At the pre-trial conference on December 4, 2003, Rosario's court-appointed counsel ("Rosario's Counsel"), stated that he was not prepared to proceed to trial because he had not yet procured a key witness, Jones, who was incarcerated in a New York State prison at the time. Rosario's Counsel requested the Trial Court to issue an order to produce Jones so that Rosario's Counsel could "get the Co-Defendant down by next week when [he was to] put on [the] Defense case." (Pre-Trial Tr. at 3.) Although the Trial Court issued the order to produce, Jones was never produced as a witness at trial, and Rosario's Counsel did not request a continuance to produce Jones during Rosario's case in chief.

### 4. Voir Dire

At the end of the third round of jury selection, when ten jurors had been seated, Rosario raised a Batson challenge to the prosecution's (the "Prosecution") use of peremptory challenges. Rosario's Counsel stated that "five out of seven [uses of peremptory challenges] have been black males or females and Hispanic males or females .... It just seems that [the Prosecution] is seeking to keep all or as many black and Hispanics off the panel as possible."

(Voir Dire Tr. at 188.)   The Trial Court did not request the Prosecution's justification for its peremptory challenges, instead ruling that "[t]he defense has failed to establish a prima facie case."   Id.   Rosario did not renew his Batson challenge after the fourth and final round of jury selection.[3]

### 5. The Alibi Charge

During Rosario's trial, the witnesses the Prosecution presented included the Officers, the detective who took Rosario's statement, and the bodega's owner.   The Trial Court held a pre-charge conference to review the jury charge before Rosario called witnesses who would support his alibi defense.   At this conference, the Trial Court Judge, the Honorable Philip Grella ("Justice Grella"), declared that:

> I'll tell [the jury] that although the alibi was raised, [Rosario] has no burden to prove it.   In fact, even if [the jury] find[s] the alibi was false, [the jury] must not, for that reason alone, find [Rosario] guilty, and that the burden of proof never shifts from the People to [Rosario], and I'll go into detail in that regard.

(Trial Tr. at 548-49.)   At that point, Rosario's Counsel asked if there was "anything in there that the People must disprove the alibi beyond a reasonable doubt?"   (Trial Tr. at 549.)   Justice Grella responded that he would instruct the jury that the burden was on the People to prove beyond a reasonable doubt that Rosario "was the person who committed the crime and, therefore, was not elsewhere at the time of its commission."   (Trial Tr. at 549.)

Later in the pre-charge conference, Rosario renewed his

---

[3] During the fourth round of voir dire, the Prosecution used two additional peremptory strikes against alternate jurors, but the record is unclear as to these individuals' racial classifications.

request for the charge to "be more specific" and, "to make it really clear to the jury," to "adjust one line in there which says that, to the effect that now the defense has raised alibi [sic] ... the People now must disprove the alibi ... beyond a reasonable doubt." (Trial Tr. at 555.) The Trial Court refused to alter the charge despite Counsel's renewed objection.

At the close of Rosario's trial, Justice Grella read the jury charge, which included the following alibi language:

> Now the defendant raised an alibi. The defendant contends that the defendant could not have committed the charged crime because he was elsewhere at the time of the commission.
>
> Although the defendant raised the alibi, the defendant has no burden to prove it. In fact, even if you find the alibi is false, you must not, for that reason alone, find the defendant guilty.
>
> To do that would be to shift the burden of proof from the People to the defendant. The People are required to prove beyond a reasonable doubt, on all the evidence presented, that the defendant was the person who committed the crime and, therefore, was not elsewhere at the time of its commission.
>
> To prove that, the People may rely solely upon the evidence they offered to establish beyond a reasonable doubt that the defendant committed the crime.
>
> The People are not required to present additional evidence that independently proves that the defendant was not where he claims to have been at the time of the crime.
>
> If you find from the evidence that the People have proven beyond a reasonable doubt that the defendant committed a crime charged, you may find, from the same evidence, that the People have proven beyond a reasonable doubt that the defendant was not elsewhere at the time of its commission.

(Trial Tr. at 749-51.) After completing the jury charge, Justice Grella asked if there were any objections. Rosario's Counsel replied "No, your Honor." (Trial Tr. at 769.)

6. <u>Verdict and Appeal</u>

- 6 -

The jury returned a verdict convicting Rosario of the Offenses. The Trial Court then sentenced Rosario to a determinate twelve-year sentence, as well as two concurrent three-and-a-half to seven-year terms and one concurrent one-year term.

Rosario appealed his conviction to the New York State Supreme Court, Appellate Division, First Department (the "Appellate Division"). Appellate counsel for Rosario argued that the Trial Court committed reversible error when it: (1) refused to suppress Rosario's statement to the police as the product of an unlawful arrest; (2) denied Rosario's application for adjournment to afford him the opportunity to procure Jones as a witness; (3) ruled against Rosario's <u>Batson</u> challenge; and (4) failed to instruct the jury unequivocally that the People were required to disprove Rosario's alibi beyond a reasonable doubt. On March 9, 2006, the Appellate Division unanimously affirmed Rosario's conviction. <u>See</u> <u>People v. Rosario</u>, 811 N.Y.S.2d 33 (App. Div. 1st Dep't 2006). The Appellate Division found that the Officers had sufficient probable cause to arrest Rosario, and accordingly, the Trial Court properly denied Rosario's motion to suppress the physical evidence and his statement to the police. <u>See</u> <u>id.</u> at 34. The Appellate Division also found that "[t]he record does not support the defendant's assertion that the [Trial Court] denied a request for an adjournment." <u>Id.</u> The Appellate Division declared Rosario's <u>Batson</u> challenge "without merit." <u>Id.</u> at 35. Finally, the Appellate Division found Rosario's challenge to the Trial Court's alibi charge was "unpreserved," and in the alternative, "without merit." <u>Id.</u>

Rosario, through counsel, filed an application for leave to

- 7 -

appeal to the New York Court of Appeals (the "Court of Appeals").
(See Application for Leave to Appeal of Randall D. Unger, dated
March 14 and March 27, 2006, attached as Ex. D to Resp. Dec.)  By
letters filed on March 14 and 27, 2006 with the Court of Appeals,
Rosario renewed the arguments presented to the Appellate Division,
and he included copies of the briefs filed with the Appellate
Division.  On June 9, 2006, the Court of Appeals denied leave.  See
People v. Rosario, 853 N.E.2d 259 (N.Y. 2006).

B.    TIMELINESS

Under 28 U.S.C. § 2244(d)(1), a one-year limitation period
applies to the filing of petitions by state prisoners seeking
federal habeas corpus review.  This period runs from the date on
which petitioner's conviction becomes final on direct review, or the
expiration of time to seek appeal.  See § 2244(d)(1).  In the
instant case, the limitation period began on September 8, 2006, the
date Rosario's time expired to seek a writ of certiorari to the
Supreme Court challenging the ruling of the highest state court
affirming his conviction, making Rosario's conviction final.
Respondent has not disputed the timeliness of Rosario's habeas
petition, which was filed on June 1, 2007, within the one-year
limitation period.

### III. **DISCUSSION**

A.    LEGAL STANDARDS FOR HABEAS RELIEF

1.    Exhaustion

A petitioner in custody pursuant to a judgment of a state
trial court is entitled to habeas relief only if he can show that
his detention violates the United States Constitution, federal law,

-8-

or treaties of the United States.  See 28 U.S.C. § 2254(a).  Before
seeking federal relief, however, a petitioner must exhaust all
available state court remedies.  See 28 U.S.C. § 2254(b)-(c).  This
standard generally requires that the petitioner "fairly present" his
claims to the highest available state court, "setting forth all of
the factual and legal allegations he asserts in his federal
petition."  Daye v. Attorney Gen., 696 F.2d 186, 191-92 (2d Cir.
1982) (internal citations omitted).

All of Rosario's habeas claims are exhausted.  Each claim was
raised in the Appellate Division "in terms so particular as to call
to mind a specific right protected by the Constitution."  Id. at
194.  Rosario later sought leave to appeal the rejection of his
claims to the New York Court of Appeals, the highest available state
court, thereby exhausting his state court remedies on each of these
three claims.

2. Independent and Adequate State Grounds

A federal court's authority to review a habeas petition also
depends on whether the state court adjudicated the petitioner's
claims on the merits or on state procedural grounds.  See Coleman
v. Thompson, 501 U.S. 722, 729-30 (1991); Harris v. Reed, 489 U.S.
255, 263 (1989).  A state court adjudicates a petitioner's federal
claims "on the merits" under 28 U.S.C. § 2254(d) when it: (1)
disposes of the claim on the merits, and (2) reduces its disposition
to judgment.  See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir.
2001).  A claim resolved on the merits is finally resolved, with res
judicata effect, on substantive rather than procedural grounds.  See
id. at 311; see also Castillo v. Walsh, 443 F. Supp. 2d 557, 562

(S.D.N.Y. 2006).

To succeed on habeas, the petitioner must show that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or ... [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). A decision is contrary to Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court precedent]" or "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-406 (2000). A decision involves an unreasonable application of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. An unreasonable application is not simply an incorrect application, but "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000) (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)). However, the state court decision need not be "so off the mark as to suggest judicial incompetence" before habeas relief may be granted. Francis S., 221 F.3d at 111.

A claim resolved on independent and adequate state procedural

-10-

grounds is generally not subject to review on habeas. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). There are limited circumstances where a federal court may conduct a habeas review of claims resolved on state grounds. Federal review is permissible if the petitioner can demonstrate any one of the following circumstances: (1) actual innocence of the crime charged, Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002); (2) cause for the procedural default resulting in prejudice, Edwards v. Carpenter, 529 U.S. 446, 451 (2000); (3) or that the procedural bar that the state court applied is not adequate, Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003).

Rosario has not asserted actual innocence, and he has not attempted to provide cause for any default. This situation leaves only the question of the adequacy of the applicable state procedural rule. Grounds to determine the adequacy of a state procedural bar are: (1) whether the alleged procedural violation was actually relied on in the state court, and whether compliance with the state rule would have changed the state court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether the petitioner had substantially complied with the rule given the realties of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. See Cotto, 331 F.3d at 240.

B.   APPLICATION TO ROSARIO'S CLAIMS

    1. Alibi Charge

Rosario challenged the Trial Court's alibi charge on the

-11-

grounds that it failed to properly convey to the jury that Rosario did not bear the burden of proving his alibi charge, and that at all times the burden to prove Rosario's guilt beyond a reasonable doubt remained with the Prosecution. Rosario raised his objection during the pre-charge conference but failed to renew it once the Trial Court read the charge to the jury.

The Appellate Division declared that Rosario's challenge to the alibi charge was "unpreserved." A declaration that a claim is "unpreserved" is a sufficient indication that the state court denied the claim based on state procedural grounds. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). Although the Appellate Division went on to find Rosario's claim "without merit," an alternative ruling on the merits does not remove the procedural bar created by the independent and adequate state ruling. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1991); Green, 414 F.3d at 294.

The record is unclear as to the grounds upon which the Appellate Division relied when it determined that Rosario's challenge to the alibi charge was unpreserved, but it is likely that the Appellate Division was persuaded by respondent's argument that New York's contemporaneous objection rule, C.P.L.R. § 470.05(2), barred Rosario's claim because Rosario failed to renew his objection after the charge was read to the jury. The Second Circuit recognizes New York's contemporaneous objection rule as an independent and adequate state procedural rule barring habeas review. See, e.g., Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007). Further, New York State caselaw is consistent with this result in this case. See People v. Griffin, 808 N.Y.S.2d 163, 163-

-12-

64 (App. Div. 1st Dep't 2005) (dismissing jury charge complaint because, though defendant objected to charge at pre-charge conference, defendant failed to renew his objection after the jury charge was read).

Even assuming, however, that Rosario's alibi claim was properly preserved, the claim would still be denied on the merits, as the Appellate Division indicated in the alternative.  To be cognizable on habeas, a challenge to a jury charge must not only show that it is erroneous, but that it violates a federal right.  See United States ex rel. Smith v. Montanye, 595 F.2d 1355, 1359 (2d Cir. 1974).  "An erroneous state jury instruction is typically grounds for federal habeas relief only if it 'so infected the entire trial that the resulting conviction violates due process.'"  Valtin v. Hollins, 248 F. Supp. 2d 311, 316 (S.D.N.Y. 2003) (quoting Blazic v. Henderson, 900 F.2d 534, 541 (2d Cir. 1990)); see also Middleton v. McNeil, 541 U.S. 433, 437 (2005); Cupp v. Naughten, 414 U.S. 141, 147 (1973).  Further, as explained above, the state court's ruling must not only be erroneous, but "contrary to, or ... an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Rosario has failed to meet this burden.  The Trial Court clearly stated that the burden remained with the Prosecution to prove Rosario's guilt beyond a reasonable doubt, including "that the defendant was the person who committed the crime, and therefore, was not elsewhere at the time of the commission." (Trial Tr. at 750.) Even assuming that Rosario is correct in his assertion that the jury charge would have been clearer if it included language stating

-13-

expressly that "the People now must disprove [Rosario's] alibi ...
beyond a reasonable doubt," (Trial Tr. at 555), such a minor
clarification could not be said to "infect[] the entire trial" with
constitutional error and the state court's ruling otherwise is
hardly contrary to, or an unreasonable application of, United States
Supreme Court precedent.   Accordingly, Rosario's claim that the
Trial Court's alibi charge was erroneous is denied.

### 2. Failure to Suppress Evidence

Rosario asserts that the police did not have probable cause to
arrest him, and thus the evidence and statements resulting from this
arrest violated his Fourth Amendment rights and should be excluded
from consideration at trial.   See Wong Sun v. James, 371 U.S. 471
(1963).   Rosario properly raised this claim in the state courts, so
it is exhausted, and was denied on the merits.   However, it is well-
established that Fourth Amendment claims are not cognizable on
federal habeas review.   See Stone v. Powell, 428 U.S. 465, 489-495
(1976) (finding that state prisoners who had the opportunity for
full and fair consideration of their Fourth Amendment claim by state
courts at trial and on direct review may not also invoke their claim
again on federal habeas review).   As a pro se litigant, Rosario's
claims are entitled to "liberal[] interpret[ation]," McPherson v.
Coombe, 174 F.3d 276, 280 (2d Cir. 1999).   But even under such a
liberal interpretation, this Court cannot read Rosario's suppression
claims as anything other than based on the Fourth Amendment.
Accordingly, Rosario's petition for a writ of habeas corpus on the
basis of his suppression claim is denied.

### 3. Failure to Provide a Continuance

Rosario asserts that the Trial Court failed to grant him a continuance in order to procure a witness for his defense. In affirming his conviction, the Appellate Division concluded that Rosario made no request for a continuance. See  Rosario, 811 N.Y.S.2d at 34-35 ("The record does not support defendant's assertion that the court denied a request for an adjournment .... [H]e did not request an adjournment or any other relief.").

State court determinations of factual issues "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The burden to disprove the state court factual determination rests on the petitioner, who must rebut the state court's findings by clear and convincing evidence. See id.

The record is clear that Rosario failed to sufficiently request an adjournment. Approximately five days before trial, the Trial Court asked Rosario's Counsel whether he was ready to proceed to trial, and Rosario's Counsel declared that he was not because he had not yet procured Jones, Rosario's co-defendant, who was incarcerated at that time, as a witness for Rosario's case-in-chief. Rosario's Counsel then requested that the Trial Court issue an order to produce Jones as a witness but did not expressly request a continuance. The Trial Court issued the order, but declared that a previous determination had been made that "this case was, in fact, ready for trial." (Pre-Trial Tr. at 3.) Further, Rosario did not attempt to call Jones as a witness, or expressly request an adjournment at any time during the trial for the purpose of procuring Jones's testimony. Accordingly, Rosario has failed to establish by clear and convincing that the Appellate Division was

-15-

factually incorrect in ruling that Rosario failed to request an adjournment.

Even assuming that Rosario had sufficiently requested an adjournment at trial, his claim would still fail on the merits. Determinations on motions for adjournment are "made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed." Avery v. United States, 308 U.S. 444, 446 (1940). "Only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution].'" Drake v. Portundo, 321 F.3d 338, 344 (2d Cir. 2003) (quoting Morris v. Slappy, 461 U.S. 1, 12 (1983)). While the Constitution protects the right of a party to present witnesses, Washington v. Texas, 388 U.S. 14, 19 (1967), courts have not found a violation of this right where the trial court refuses to postpone trial, but otherwise does not interfere with party's ability to compel or cross-examine witnesses. See, e.g., Jenkins v. McKeithan, 395 U.S. 411, 428-29 (1969) (invalidating administrative hearing where defendant could not cross examine witnesses); Washington, 388 U.S. at 22-23 (1967) (invalidating state law barring certain classes of defense witnesses). In Drake, the Second Circuit denied habeas where the state court refused a continuance sought by the defense in order to procure a witness to rebut the claims of prosecution's surprise expert witness. See id. at 344; see also United States v. Falange, 426 F.2d 930, 935 (2d Cir. 1970) (upholding denial of continuance where "appellants knew of the existence of [the witness] at least a week before requesting a continuance.").

The circumstances of Rosario's case are similar to those in

-16-

Falange.[4]  Both Rosario and Falange were aware of their respective witnesses at least a week before they intended to call them but made no apparent attempt to produce their witnesses.  See Falange, 426 F.2d at 935.  Accordingly, even if Rosario prevailed in demonstrating that the state court erred in its factual finding and that he did sufficiently request an adjournment, his claim of error fails on the merits.

### 4. Trial Court's Batson Inquiry

Rosario's final claim is that the Trial Court erred in finding that he had not established a prima facie case that the Prosecution was using his peremptory challenges to unlawfully discriminate against black and Hispanic jurors.

The use of a peremptory challenge to exclude a jury member because of his or her race violates the Equal Protection Clause of the Constitution.  See Batson v. Kentucky, 476 U.S. 79, 89 (1986).  To combat discrimination in jury selection while protecting the traditional use of peremptory challenges free of judicial control, Batson established a three-step evidentiary test.  See Rice v. Collins, 546 U.S. 333, 338 (2006).  First, the objecting defendant must make a prima facie showing that peremptory challenges are being used to exclude jurors because of their race.  The moving party may establish a prima facie case that the other party is using peremptory challenges to remove a cognizable class of jurors based

---

[4] Though Falange is distinguishable because there the witness was free, while here Jones was in the custody of New York State, Rosario has made no argument that New York State unreasonably refused the Trial Court's order to produce Jones.  Cf. Washington v. Texas, 388 U.S. 14, 16, 22-23 (1967) (invalidating state law that prohibited defendant from calling incarcerated co-defendants as witnesses).

solely on the evidence concerning the exercise of peremptory challenges at trial. See id. at 96. The moving party "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petite jury on account of their race." Id. While the objecting party must establish a prima facie case, "[t]he burden ... is not onerous." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); see also Batson, 476 U.S. at 94 n.18. The moving party need not establish that it is more likely than not that peremptory challenges were used in a discriminatory manner. See Johnson v. California, 545 U.S. 162, 170 (2005).[5] The defendant need only establish "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Id. Once the moving party establishes a prima facie case, the second step under Batson comes into effect. The Trial Court must require the striking party to provide a race-neutral explanation for striking the jurors in question. See Rice, 546 U.S. at 338. Third, the Trial Court must determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, 476 at 98.

Rosario's Counsel, after the conclusion of the third of four jury pools, raised an objection pursuant Batson. He stated:

> I believe five out of the seven [excluded jurors] have been black males or females and Hispanic males or females .... It just seems that [prosecution] is seeking to keep all or as many blacks and Hispanics off the panel as possible. So I'm

---

[5] Although both Rice and Johnson were decided after the Trial Court's determination of Rosario's Batson challenge, Rice and Johnson predated the Appellate Division's affirmance of the Trial Court's Batson determination. Therefore, Rice and Johnson are "[Supreme] Court[] decision[s] as of the time of the relevant state-court determination," and are binding and relevant precedents. Williams v. Taylor, 529 U.S. 362, 412 (2000).

going to ask that she announce a race issue decision as to those exclusions.

(Voir Dire Tr. at 188.)  The Trial Court, however, found that "[t]he defense ... failed to establish a prima facie case or requirements thereof, with regard to a challenge under the mandates of Batson v. Kentucky," and denied Rosario's challenge.  (Voir Dire Tr. at 188-89.)  Jury selection continued, with the Prosecution using two more peremptory strikes, but Rosario did not raise a Batson challenge again.

Because the Trial Court resolved Rosario's prima facie Batson challenge on the merits,[6] this Court reviews the decision of the Trial Court to determine whether it "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); see Harris, 346 F.3d at 344.  "[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Torres v. Berbary, 340 F.3d 63, 69 (2d Cir. 2003).  Further, it is the duty of the habeas petitioner to establish a record upon which he seeks to challenge the state court determination.  See § 2254(2) (prohibiting the use of evidentiary hearings except under limited circumstances not applicable here); Sorto v. Herbert, 497 F.3d 163, 171-72 (2d Cir.

---

[6] Where the highest state court to review the decision summarily affirms the Trial Court, the Federal Court must look to the Trial Court's treatment of peremptory strikes.  See Ylst v. Nunner, 501 U.S. 797, 803 (1991); Harris v. Kuhlmann, 346 F.3d 330, 345 (2d Cir. 2003).

2007) ("[A] petitioner cannot establish that the state court unreasonably concluded that the pattern was not sufficiently suspicious unless the petitioner can adduce a record of the baseline factual circumstances attending the <u>Batson</u> challenge."). Underscoring the significance of an adequate trial record in this regard, the <u>Sorto</u> court further elaborated: "[T]o the (appreciable) extent that information regarding the jury and the voir dire process bears upon establishing a prima facie case, a sufficient appellate record may depend on a recitation of relevant information on the record in the Trial Court." <u>Id.</u> at 172.

This Court is not persuaded that the Trial Court's decision on Rosario's <u>Batson</u> challenge was unreasonable. First, Rosario raised his <u>Batson</u> challenge before the completion of voir dire. While Rosario was free to raise his <u>Batson</u> claim whenever he believed there was sufficient evidence to establish a prima facie case of discrimination, it may be reasonable for a Trial Court to deny the challenge and wait to see how record develops once the full jury is empaneled. <u>See</u> <u>Sorto</u>, 497 F.3d at 171; <u>Overton v. Newton</u>, 295 F.3d 270, 279 (2d Cir. 2002). Rosario, however, did not raise a <u>Batson</u> challenge at the completion of jury selection, and therefore the Trial Court did not have occasion to determine the challenge based on a complete record.

Second, Rosario did not meet his burden of establishing a sufficient trial record demonstrating that the Trial Court acted unreasonably in denying Rosario's <u>Batson</u> challenge. The record shows only that five of the Prosecution's first seven peremptory challenges were used against blacks or Hispanics. The use of more

than 70 percent of peremptory challenges to exclude racial minorities could give rise to an inference of racial discrimination, prompting the Trial Court to inquire into the Prosecution's motivations. See, e.g., People v. Jenkins, 554 N.E.2d 47, 50 (N.Y. 1990) (finding inference of discrimination where seven of ten blacks, and only 3 of 37 nonblacks, on venire were struck). This information alone, however, is insufficient. "[O]nly a rate of minority challenges significantly higher than the minority percentage of the venire would support a statistical inference of discrimination." United States v. Alvarado, 923 F.2d 253, 255 (2d Cir. 1991). The record here, however, does not establish how many members of minorities were included in the initial jury pool, or how many remained on the jury after the use of peremptory challenges. A party using 70 percent of peremptory challenges to exclude minorities is unsurprising if, for instance, the veniremen as whole is comprised of 70 percent or more minorities. Cf. United States v. Diaz, 176 F.3d 52, 77 (2d cir. 1999) (affirming district court ruling that there was "no statistical inference of racial discrimination because the government's 25 percent rate of minority strikes was not significantly higher than the 23 percent minority population of the venire"). On the other hand, even a small number of peremptory challenges are suspect if they target a high proportion of the prospective minority jurors. Cf. Cousin v. Bennett, 511 F.3d 334, 338 (2d Cir. 2008) ("[A] prosecutor's challenge of the only prospective juror of a particular race could give rise to a sufficiently strong inference of racial motivation to make a prima facie showing."); Harris, 346 F.3d at 347 (granting

habeas where trial court unreasonably found no prima facie case of discrimination when the prosecution eliminated all four black jurors); <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 249 (2d Cir. 1998) (finding a prima facie case where all three black jurors were struck).  While the racial makeup of the venire was observable to the Trial Court and the parties at the time the Trial Court denied Rosario's claim, Rosario failed to establish this information in record for this Court to properly adjudicate the matter on review. Accordingly, this Court cannot find that the Trial Court was unreasonable in denying Rosario's prima facie <u>Batson</u> challenge.

### IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the petition of Petitioner Alexy Rosario ("Rosario") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Rosario has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  <u>See</u> 28 U.S.C. § 2253(c);  <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-13 (2d Cir. 2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:    New York, New York
          27 March 2008

VICTOR MARRERO
U.S.D.J.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 27 08

-22-